NEW CASTLE COUNTY, a political subdivision of the State of Delaware, and Department of Finance of New Castle County, Appellants,

v.

CHRYSLER CORPORATION, a corporation of the State of Delaware; Board of Assessment Review of New Castle County; and Richard M. Lagergren, Joseph Hickmott, Harold Ostdahl, and George B. Schreppler, Jr., Individually as Members of the Board of Assessment Review of New Castle County, Appellees.

Civ. A. No. 91A–02–007.

Superior Court of Delaware, New Castle County.

Submitted: June 9, 1995.

Decided: Aug. 25, 1995.

Dennis J. Siebold, Finance Legal Officer, New Castle County Department of Finance, Wilmington, for Appellants.

James F. Burnett, Potter, Anderson & Corroon, Wilmington, for Appellee Chrysler Corporation.

## OPINION

COOCH, Judge.

Appellants, New Castle County, a political subdivision of the State of Delaware, and the Department of Finance of New Castle County (collectively "the County") appeal to this Court, pursuant to 9 Del.C. § 8312(c) and Super.Ct.Civ.R. 72, from two decisions of the Board of Assessment Review of New Castle County ("the Board") dated January 29, 1991 and March 27, 1992, which had assessed the Newark, Delaware automobile assembly plant owned by Appellee, Chrysler Corporation ("Chrysler"). The parties have thoroughly briefed numerous substantive issues arising from the Board's decisions. However, because this Court holds that it does not have jurisdiction to entertain an appeal by the County from a decision of the Board, the County's appeal must be **DISMISSED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This long-going dispute between the parties arises from the County's 1985 general revaluation of all real property in New Castle County. The proceeding involves the County's assessment, for ad valorem tax purposes, of Chrysler's automobile assembly plant located in Newark, Delaware. The complete procedural history of this controversy between the parties is lengthy and complex; however, it is not set out in great detail here because it is not essential to this Court's decision dismissing the County's appeal on jurisdictional grounds.

In 1985, Chrysler appealed the County's initial $52,642,000 assessment of its automobile plant. On May 21, 1985, the first appeal hearing was held before a Referee who denied Chrysler's claim for a reduction of the County's assessment. On May 28, 1985, the Board of Assessment Review affirmed the decision of the Referee.

Chrysler appealed the decision of the Referee and the Board of Assessment Review to the Superior Court ("the 1985 appeal"). Chrysler Corp. v. New Castle County Bd. of Assessment Review, Del.Super., C.A. No. 85A–JN–24. Chrysler's appeal was filed pursuant to 9 Del.C. § 8312(c); however, due to technical difficulties with the operation of a tape recorder, significant portions of the record before the Referee were lost. Since the parties could not reconstruct the missing portions of the record, they agreed to have the action remanded to the Board of Assessment Review. On June 29, 1987, a stipulation to that effect was entered. Id.

Subsequent to the 1985 general revaluation, the County made several supplemental assessments on Chrysler's property to reflect additions, improvements, and other changes to the property. Chrysler filed separate appeals from each assessment with the Board.

The stipulated rehearing was held on January 8, 9, 10 and 29, 1991 before the Board ("the 1991 hearing"). Prior to the rehearing, the parties agreed to first consider the remanded appeal of Chrysler's property as it existed in 1985 and to consider the supplemental assessments at a later hearing. At the 1991 hearing, the Board reduced Chrysler's assessment from $52,642,000 (as valued by the County) to $34,402,000. On February 20, 1991, the County appealed to this Court from the Board's January 29, 1991 decision ("the 1991 appeal"), which was docketed as New Castle County et al. v. Chrysler Corp., Civil Action No. 91A–02–7.

The second set of hearings before the Board were held on February 27 and 28, 1992 ("the 1992 hearing"). Those hearings considered the supplemental assessments of Chrysler's property. At the 1992 hearings, the Board reduced the sum of the County's supplemental assessments from $9,566,900 (as valued by the County) to $6,689,700. On March 27, 1992, the County appealed to this Court from the Board's February 28, 1992 decision ("the 1992 appeal"), which was docketed as New Castle County et al. v. Chrysler Corp. Civil Action No. 92A–03–012. Chrysler filed a cross-appeal from the 1992 appeal on April 8, 1992.

Although the County filed the 1992 appeal in March of that year, it did not file the record of all proceedings below with this Court until more than two years later. On June 15, 1994, the County filed all of the transcripts and exhibits from both the 1991 and 1992 hearings before the Board under the caption of the 1991 appeal. However, this Court dismissed the County's 1992 appeal on July 26, 1994 after the Prothonotary issued to both parties a Super.Ct.Civ.R. 41(e) notice that the appeal would be dismissed if no action was taken within thirty days.

On August 31, 1994, an order was entered stating that the parties stipulated that the dismissal of the 1992 appeal should be rescinded and that the 1991 and 1992 appeals should be consolidated in the action currently before this Court. Briefing and oral argument were concluded on June 9, 1995.

### New Castle County's Claims of Error Against Board of Assessment Review

The County raises numerous claims of error on the part of the Board and asserts that this Court should reverse the decision of the Board, pursuant to 9 *Del.C.* § 8312(c), because the Board acted "contrary to law, fraudulently, arbitrarily, and capriciously" in reaching its decisions in both the 1991 and 1992 hearings. More specifically, the County argues that the Board's decisions should be reversed because the Board deliberated, to some extent, outside of the presence of counsel at both hearings and because it did not render a legally sufficient statement of the reasons for its decisions. The County also maintains that any such decisions reached by the Board in private are contrary to law because the Board acted in violation of 29 *Del.C.* § 10002(e) (Freedom of Information Act). Additionally, the County argues that the Board acted improperly by apparently accepting testimony of Chrysler's experts. The County asserts that Chrysler's experts utilized an incorrect standard of property valuation under Delaware law. Finally, the County urges that the Board acted contrary

to law by accepting testimony of Chrysler's experts in the 1992 hearing because Chrysler's experts failed to use the Board's assessment at the 1991 hearing as a base when evaluating the improvements to Chrysler's property.

Chrysler vigorously denies each of the above allegations and further asserts that the County does not have a right to appeal a decision of the Board. Additionally, Chrysler's cross-appeal alleges that, although the Board correctly ruled that Chrysler's property was substantially overvalued, the Board acted contrary to law, arbitrarily and capriciously in failing to reduce the assessment to a lower value contended by Chrysler. Because this Court determines that the County does not have a right of appeal, it need not reach any of the County's claims of error. Also, Chrysler has stated that if this Court concludes (as it does) that the County has no right of appeal, that it need not consider the merits of Chrysler's cross-appeal. Chrysler's cross-appeal is thus withdrawn.

## II. DISCUSSION

**The Superior Court Lacks Jurisdiction to Consider an Appeal of New Castle County from an Adverse Decision of the New Castle County Board of Assessment Review**

### A. 9 Del.C. § 8312(c) Neither Explicitly Nor Implicitly Grants New Castle County the Right of Appeal

■ The appellate jurisdiction of Delaware courts is limited by the Delaware Constitution and statutes. *Capano Investments v. Levenberg,* Del.Supr., 564 A.2d 1130, 1131 (1989) (citing *Shoemaker v. State,* Del.Supr., 375 A.2d 431, 435–36 (1977)). A party does not have a right of appeal from an administrative hearing "unless the statute governing the matter has conferred a right to do so." *Oceanport Industries, Inc. v. Wilmington Stevedores, Inc.,* Del.Supr., 636 A.2d 892, 900 (1994). *See also* 10 *Del.C.* § 541;[1] Del.

---

1. Ten *Del.C.* § 541 provides: "[t]he Superior Court shall have such jurisdiction as the Consti- tution and laws of this State confer upon it."

Const. Art. IV, § 7.[2]

The jurisdiction of this Court to hear appeals from the New Castle County Board of Assessment Review is contained in 9 Del.C. § 8312(c). Section 8312(c) grants a "person" a right to appeal from the Board. However, § 8312(c) does not confer on the County, explicitly or implicitly, a right of appeal. Section 8312(c) provides in pertinent part:

Any *person* who, **after properly filing an appeal before any board of assessment or department of finance,** feels aggrieved by the decision of such body may, within 30 days by postmark date after receiving notice of its decision, appeal therefrom to the Superior Court of the county **in which such person resides.** ... The Court may permit the **appellant** *or* each board of assessment or department of finance to present any new or different evidence pertinent to the matter. (Emphasis added).

As the language of § 8312(c) demonstrates, the General Assembly has granted unambiguously the right to appeal a decision of the Board of Assessment only to a "person" who has "properly fil[ed] an appeal before any board of assessment...." Additionally, § 8312(c) provides that an "appellant" *or* the "board of assessment or department of finance" may present new pertinent evidence on appeal to the court. The use of the disjunctive "or" suggests that the General Assembly did not intend the Board to be an "appellant" since there would otherwise be no reason to include the phrase "or each board of assessment or department of finance" in § 8312(c).

While this Court finds that the language of § 8312(c) is clear, it must balance this clear language against the policy argument, advanced strenuously by the County, that, generally, "[s]tatutes giving the right of appeal should be liberally construed in furtherance

of justice, and a statute which, literally construed, gives an appeal to only one party should be construed, if possible, so as to give the same right to the other party." *City of Tulsa v. Bd. of Trustees of Police Pension,* Okla.Supr., 387 P.2d 255, 258 (1963) (citations omitted). Further, the Court must further give weight to the proposition that an interpretation of a statute limiting the parties to a controversy who may bring an appeal is not preferred and that any doubt as to the proper construction of a statute that regulates an appeal should be resolved in favor of the right to appeal. 3A Norman J. Singer, *Sutherland Statutory Construction* § 67.08, at 83 (5th ed. 1992); *see also Hallahan v. Riley,* 94 N.H. 338, 53 A.2d 431, 433 (1947); *In re Preseault,* 130 Vt. 343, 292 A.2d 832, 834 (1972).

At the same time, however, this Court should not resort to legislative history in interpreting a statute where statutory language provides unambiguously an answer to the question at hand. *Arnold v. Society for Sav. Bancorp, Inc.,* Del.Supr., 650 A.2d 1270, 1287 (1994). "In the absence of any ambiguity, the language of the statute must be viewed as conclusive of the legislative intent. The judicial role is then limited to an application of the literal meaning of the words." *Id.* at 1287, (quoting *Grand Ventures, Inc. v. Whaley,* 632 A.2d 63, 68 (1993) (citations omitted)). As the Delaware Supreme Court has stated very recently:

In construing a statutory or regulatory provision, it is fundamental that the Court ascertain and give effect to the intent of the legislative or administrative body as clearly expressed in the language of the statute or regulation. *In re Adoption of Swanson,* Del.Supr., 623 A.2d 1095, 1096–97 (1993); *Giuricich v. Emtrol Corp.,* Del. Supr., 449 A.2d 232, 238 (1982). In seeking to ascertain this intent, the courts of

2. Del. Const. Art. IV, § 7 provides:

The Superior Court shall have jurisdiction of all causes of a civil nature, real, personal and mixed, at common law and all the other jurisdiction and powers vested by the laws of this State in the formerly existing Superior Court; and also shall have all the jurisdiction and powers vested by the laws of this State in the

formerly existing Court of General Session of the Peace and Jail Delivery; and also shall have all the jurisdiction and powers vested by the laws of this State in the formerly existing Court of General Sessions; and also shall have all the jurisdiction and powers vested by the laws of this State in the formerly existing Court of Oyer and Terminer.

Delaware employ the plain meaning rule. *Alfieri v. Martelli*, Del.Supr., 647 A.2d 52, 54 (1994). In other words, a court is required to give words of a statute or regulation their ordinary meaning. *Arbern–Wilmington, Inc. v. Director of Revenue*, Del. Supr., 596 A.2d 1385, 1388 (1991). In particular, "the courts may not engraft upon a statute . . . language which has been clearly excluded therefrom by the Legislature." *Alfieri*, 647 A.2d at 54 (quoting *Giuricich*, 449 A.2d at 238).

*State Farm Mutual Auto. Ins. Co. v. Mundorf*, Del.Supr., 659 A.2d 215, (1995), Id. at 219–20 (holding that in absence of express language, the Court would not read terms into unambiguous language of *Delaware Automobile Insurance Plan*, Ins.Reg. 17, § 11(a)(7)).

■ Finally, this Court must consider the principle that statutes relating to taxation and collection of taxes should not be given breadth greater than that which is clearly apparent from the wording of the statute. *Wilmington Trust Co. v. Caratello*, Del.Super., 385 A.2d 1131, 1134 (1978). As a general rule, statutes providing for assessments upon property must be construed strictly and given an interpretation favorable to the property owner. *Riley v. Banks*, Del.Super., 62 A.2d 229, 234 (1948).

This Court has considered the County's right to appeal from a decision of the Board in light of the above stated propositions of law and determines that the "plain meaning" of § 8312(c) is that the County has no right of appeal from a decision of the Board. This Court cannot read a right of the County into a statute where the General Assembly has not clearly provided the County such a right. Since this Court finds that the language of § 8312(c) is unambiguous, the legislative history of § 8312(c) is not determinative of the legislature's intent with regard to that statute. However, even if § 8312(c) is deemed ambiguous, the legislative history of § 8312(c) does, in fact, support further this Court's decision that the General Assembly did not intend to grant the County a right to appeal a decision of the Board.

## B. Legislative History of 9 Del.C. § 8312(c) and 9 Del.C. § 1306

The language of § 8312(c) can be traced to 50 *Del.Laws*, c. 181, which was enacted into law on May 31, 1955. That Act was codified in part as 9 *Del.C.* § 8313(c), the predecessor to present § 8312(c). As originally enacted, § 8313(c) did not explicitly provide the County with a right of appeal from a decision of the Board of Assessment Review. Section 8313(c) originally provided in part:

Any person who, after properly filing an appeal before any Board of Assessment, feels aggrieved by the decision of the Board may, within thirty (30) days after receiving notice of the Board's decision, appeal therefrom to the Superior Court of the County in which such person resides. . . . The Court may permit the appellant or the Board to present any new or different evidence pertinent to the matter.

The language of § 8313(c) was clear. Only "persons," not government entities, were initially granted a right of appeal from decisions of "any Board of Assessment."

Section 8313(c) was amended by the County Reorganization Act, 55 *Del.Laws*, c. 85, which was enacted into law on May 26, 1965. The County Reorganization Act assigned the functions which were formerly exercised by the Board of Assessment to the New Castle County Department of Finance. This Act also empowered the Board to oversee initial appeals from assessments set by the Department of Finance. Further, the Act added the words, "or Department of Finance" after "Board of Assessment" to § 8313(c) in order to reflect the role of the newly created Department of Finance.

Fifty-five *Del.Laws*, c. 85 also enacted 9 *Del.C.* § 1309 (now § 1306). That section provided:

Nothing herein shall be construed as limiting the right of a property owner to appeal to the courts in connection with the assessment of his property for taxation as provided by law.

Thus, it seems clear that, as the law stood prior to 1972, the County was not granted a right of appeal from the Board.

However, on July 21, 1972, 58 *Del.Laws,* c. 559 was enacted into law and amended both §§ 8313(c) and 1309. The County asserts that this Act granted New Castle County a right of appeal that has never been effectively removed by the General Assembly. Fifty-eight *Del.Laws,* c. 559 inserted ", or New Castle County," after the word "Department" in § 8313(c). Thus, § 8313(c) was changed to read:

> Any person who, after properly filing an appeal before any board of assessment or department of finance, feels aggrieved by the decision of the board or department, or New Castle County, may, within 30 days after receiving notice of the board's or the department's decision, appeal therefrom to the Superior Court of the county in which such person resides.... The Court may permit the appellant or the board or department to present any new or different evidence pertinent to the matter.

While the draftsmanship of § 8313(c) is less than clear, it appears that the General Assembly intended specifically to grant New Castle County a right of appeal. The General Assembly's intent was manifested further by 58 *Del.Laws,* c. 559's simultaneous amendment to § 1309 (now § 1306) which added the words "or County" after "property owner." Section § 1309, as amended, then read:

> Nothing herein shall be construed as limiting the right of a property owner or County to appeal to the courts in connection with the assessment of his property for taxation as provided by law.

Clearly, 58 *Del.Laws,* c. 559, viewed as a whole, was intended to expand the right to New Castle County to appeal from adverse decisions of the Board.

 The General Assembly, however, soon repealed the County's right of appeal by adopting the 1974 Revisions to the Delaware Code. As part of the 1974 revision of the Delaware Code, the Code Revisors removed the reference to ", or New Castle County," from § 8313(c). Then, the General Assembly enacted the Code Enactment Statute (60 *Del.*

*Laws,* c. 56), effective May 13, 1975, which adopted the 1974 Delaware Code Annotated as the "positive law of this State." *Roy v. Williams,* Del.Supr., 382 A.2d 1351, 1354 (1978). The Delaware Code was thus revised and presented to the General Assembly for review prior to its being enacted into law.[3] Consequently, the 1974 Code is more than a mere revision of prior Delaware law; it is a re-enactment of the entire body of Delaware law. *Id.*

In the 1974 recodification, § 8313(c) became § 8312(c) and § 1309 became § 1306. During the recodification, § 8313(c) (now § 8312(c)) was revised to read in part:

> Any person who, after properly filing an appeal before any respective county governing body, feels aggrieved by the decision of such body may, within 30 days after receiving notice of its decision, appeal therefrom to the Superior Court of the county in which such person resides.... The Court may permit the appellant or each board of assessment or department of finance to present any new or different evidence pertinent to the matter.

Thus, any explicit right of New Castle County to appeal was eliminated from § 8312(c) by the 1974 Code revision. Although the Code Revisors changed the language of § 8313(c) in 1974, § 1309 was renumbered as § 1306 but the language therein remained unchanged; neither the Code Revisors or the General Assembly removed the reference to the "County" from § 1306.

In 1976, in an effort to correct various "editorial errors" in Title 9, the General Assembly enacted 60 *Del.Laws,* c. 468, which became effective on June 18, 1976. That Act was entitled:

AN ACT TO AMEND TITLE 9, RELATING TO COUNTIES TO CORRECT EDITORIAL ERRORS IN THE DELAWARE CODE ANNOTATED.

This Act amended, *inter alia,* § 8312(c) by striking the words, "respective County governing body" and substituting the words,

---

**3.** Sixty *Del.Laws,* c. 56, § 1 provides, "All laws of the State of Delaware enacted by the General Assembly appearing in the Delaware Code Annotated, Revised 1974, *attached hereto* and by this reference incorporated herein, are hereby and enacted as the general and permanent law of the State of Delaware." (Emphasis added).

"each Board of Assessment or Department of Finance." The Act did not address the possible conflict between § 8312(c) and § 1306 insofar as any right of New Castle County to appeal was concerned. Notably, this Act did not restore the term "or New Castle County" that had been deleted from § 8313(c) in 1974.

Section 8312(c) was amended again in 1991 [4], while § 1306 has not been amended since 1972. The General Assembly has amended § 8312(c) twice since the 1974 Code revision but did not reinsert New Castle County's right to appeal in either the 1976 "editorial errors" bill (enacted only one year after the effective date in 1975 of the 1974 Code Revision) or in the 1991 amendment. Thus, in the 40–year history of § 8312(c), the statute has made explicit reference to New Castle County's right of appeal for less than three years, from 1972 to 1975.

■ It is significant that the Code Enabling Statute (60 *Del.Laws,* c. 56) is more than a compilation of prior laws; it is the positive law of the state. *Roy,* 382 A.2d at 1354. Substantive change to existing law by the Code Revisors and approved by the General Assembly may be effective to change the law. As the Delaware Supreme Court has stated:

> When the language of a statute as revised and embodied in a code as positive law is plain and unambiguous, when its meaning is clear, and when it is unmistakably chosen for the purpose of effecting a change in the law, there is no room for construction, and the courts must enforce the statute as written. "It is, of course, true that if the existing law is, in fact, changed either by a Code, in its strict sense, or by a revision or compilation of statutes, the adoption of the Code, revision or compilation effectuates the change, no matter what the authority of the codifiers may have been."

*Monacelli v. Grimes,* Del.Supr., 99 A.2d 255, 263–64 (1953) (citing *Nigro v. Flinn,* Del.Super., 192 A. 685, 688 (1937)). In the case at bar, the Court must presume that the General Assembly intended substantive changes to § 8312(c) when it adopted the Code revision in 1974. The Code revision was adopted as the positive law of the State and the Code Revisors' language is clear and unambiguous: New Castle County's right of appeal was explicitly eliminated. As stated in *Monacelli,* there is no room for statutory construction when the language is clear, "no matter what the authority of the codifiers may have been." *Id.*

■ The County, however, argues that the 1974 revision to § 8312(c), deleting New Castle County's right of appeal, was an "omission" on the part of the Revisors and "should not be considered as having been intended by the legislature." To support its argument, the County cites 1 *Del.C.* § 103 which grants certain exceptions to the repeal of prior laws. One *Del.C.* § 103 provides:

> All codes, and parts thereof, and all laws amendatory thereof and all other statutes, and parts thereof, of a general and permanent nature in effect on December 31, 1974, are repealed unless (1) expressly continued by specific provision of this Code, (2) omitted improperly or erroneously as a consequence of compilation, revision, or both, or laws enacted subsequent to the enactment of the Code which became effective on February 23, 1953, including, without limitation, any such omissions that may have occurred during the compilation, revision or both, of the laws comprising this Code, or (3) omitted changed or modified by the Revisors, or their predecessors, in a manner not authorized by § 211 of this title. In the event 1 of the above exceptions should be applicable, the law as it existed prior to May 13, 1975, shall continue to be valid, effective and controlling.

The County argues that "at least one" of the above alternative exceptions has been met. Specifically, the County asserts that under 1 *Del.C.* § 103(3) the Code Revisors omitted, changed or modified the Code in a manner not authorized by § 211 [5]. The

---

4. 68 *Del.Laws,* c. 167, § 2, effective July 15, 1991. This Act added "by postmark date" after the words "30 days." This amendment became effective after the date of the County's appeal in

this case and does not otherwise substantively change § 8312(c).

5. One *Del.C.* § 211 provides:

County cites 1 *Del.C.* § 211(a)(9), which allows the Code Revisors to "[m]ake any . . . purely formal or clerical changes in keeping with the purpose of the revision." According to the County, when the Code Revisors failed to incorporate prior statutory enactments into the 1974 revised Code, they exceeded their statutory authority and their failure cannot be presumed to repeal pre-existing law. *See Elliott v. Blue Cross and Blue Shield of Delaware, Inc.*, Del.Supr., 407 A.2d 524, 528 (1979) (holding that where Code Revisors failed to incorporate an amendment of the Insurance Code into the Code revisions, such failure by the Code Revisors did not void the amendment).

In support of its argument, the County suggests that the fact that the General Assembly amended § 8312(c) relatively quickly (in 1976) to reincorporate certain pre–1974 language is proof that the 1974 elimination of the County's right of appeal was an "omission" and ". . . not intended" by the General Assembly. Sixty *Del.Laws*, c. 468 did amend § 8312(c) to correct "editorial errors" in 1976 but, while the Act reincorporated some of the pre–1974 language in § 8312(c), it did not reincorporate all of the pre–1974 language including the County's former right of appeal. Thus, even if the 1974 Code Revisors committed error by failing to incorporate New Castle County's right to appeal in revised § 8312(c), the General Assembly had a patent and early opportunity to correct that error when it corrected other "editorial errors" in the very same section. Further, the General Assembly revisited § 8312(c) in 1991 and did not address the issue of New Castle County's right of appeal. Since the Code

revisions may be effective to change the law, and since the General Assembly has always been able to correct the Code Revisors' omission (if it was unauthorized), this Court must assume that the General Assembly intended the change to § 8312(c). *See Giuricich*, 449 A.2d at 238 ("We may not assume that the omission was the result of an oversight on the part of the General Assembly."). While 1 *Del.C.* § 103 may allow a court to correct unauthorized changes in the Code attributable to the Code Revisors, there is no provision in § 103 to correct presumptively intentional omissions in the Code by the General Assembly.

The County asserts also that the failure of the Code Revisors and of the General Assembly to remove the reference to the County's right of appeal in § 1306 (formerly § 1309) is further evidence (1) that the Code Revisors were without authority to delete New Castle County's right of appeal or (2) that the General Assembly neglected inadvertently to restore the County's right to appeal in § 8312(c) when it enacted 60 *Del.Laws*, 468, apparently believing that § 1306 alone granted such a right to the County. While the unchanged language of § 1306 gives this Court some pause, it is significant that § 1306 does not grant an affirmative right of appeal to any party. It should also be noted that § 1306 refers to appeals from "assessment of his property" (emphasis added). The term "his" could not, of course, refer to the County. Additionally, § 1306 now provides that:

> Nothing *in this chapter* shall be construed as limiting the right of a property owner or

---

(a) In performing their duties and powers under § 210 of this title, the Revisors shall not alter the sense, meaning or effect of any act of the General Assembly but they may:

(1) Renumber and rearrange sections or parts of sections;

(2) Transfer sections or divide sections so as to give to distinct subject matters a separate section number, but without changing the meaning;

(3) Insert or change the wording of headnotes;

(4) Change reference numbers to agree with renumbered chapters or sections;

(5) Substitute the proper section or chapter number for the terms "this act," "the preceding section" and the like;

(6) Strike out figures where they are merely a repetition of written words and vice versa;

(7) Change capitalization for the purpose of uniformity

(8) Correct manifest typographical and grammatical errors; and

(9) Make any other purely formal or clerical changes in keeping with the purpose of the revision.

(b) The Revisors shall omit all titles of acts, all enacting, resolving, and repealing clauses, all appropriation measures, all temporary or local statutes, all declarations of emergency, and all validity, declaration of policy, and construction clauses, except when the retention thereof is necessary to preserve the full meaning and intent of the law.

County to appeal to the courts in connection with the assessment of his property for taxation as provided by law. (Emphasis added).[6]

Section 8312(c) is a part of Chapter 83, not Chapter 13 of Title 9.

■ As stated above, this Court must assume that, in 1974, the General Assembly intended to omit a right of appeal for the County in § 8312(c). "The legislative body is presumed to have inserted every provision for some useful purpose and construction, and when different terms are used in various parts of a statute it is reasonable to assume that a distinction between the terms was intended." *Giuricich*, 449 A.2d at 238 (citing *C & T Associates v. Government of New Castle*, Del.Ch., 408 A.2d 27, 29 (1979)). Where a provision is included expressly in one part of a statute, but omitted from another, it is reasonable to conclude that the legislature was aware of, and intended, the omission. *Swanson*, 623 A.2d at 1097 (citing *Giuricich*, 449 A.2d at 238).

Even if this Court were to assume that § 1306 affirmatively granted a right of appeal to the County, there would be an irreconcilable conflict between § 1306 and § 8312(c). In this situation the later-enacted provisions of a statute (§ 8312(c)) must prevail. *State v. George F. Lang Co.*, Del.Supr., 191 A.2d 322, 325 (1963); *Rickards v. State*, Del.Supr., 77 A.2d 199, 203 (1950); *Blue Cross & Blue Shield of Del. v. Elliott*, Del.Super., 449 A.2d 267, 270 (1982).

■ Finally, to the extent that a conflict exists between the two statutes, the more specific statute must prevail. *Oceanport*, 636 A.2d at 900; *Hamilton v. State*, Del.Supr., 285 A.2d 807, 809 (1971); *McHugh v. Brown*, Del.Supr., 125 A.2d 583, 587 (1956); *Blue Cross*, 449 A.2d at 270; 2B Norman J. Singer, *Sutherland Statutory Construction* § 51.02, at 121 (5th ed. 1992). Since § 8312(c) specifically grants a right of appeal from the Board and § 1306 provides only that nothing in Chapter 13 limits a right of appeal, § 8312(c) is the more specific statute and controls this Court's decision. This Court cannot explain why the General Assembly did not amend § 1306 to remove any reference to a County's right to appeal. Quite possibly, the General Assembly and the Code Revisors simply did not focus on § 1306 when the reference to New Castle County was deleted from § 8312(c) because § 1306 is situated in a different chapter of Title 9. This Court must assume, however, that the General Assembly has intended the clear language of § 8312(c) to control appeals from the Board and did not intend to grant New Castle County a right of Appeal.

## C. Precedent is Insufficient to Establish a Vested Right of Appeal for the County

■ The County argues that it has, in fact, appealed to the Superior Court from decisions of the Board of Assessment Review since 1978.[7] The County acknowledges that parties may not, by agreement, vest a court with appellate jurisdiction that it does not otherwise have. However, the County argues that a "long-standing, practical, and plausible administrative interpretation of a statute of doubtful meaning," while not controlling, will be accorded great weight by a court construing the statute. *Council 81, AFSCME, AFL–CIO v. State Department of Finance*, Del.Supr., 293 A.2d 567, 571 (1972); *Nationwide Mutual Insurance Co. v. Krongold*, Del.Supr., 318 A.2d 606, 609 (1974).

6. At some point after 1972, "herein" in § 1309 (now § 1306) was replaced, apparently by the Code Revisors, with "in this chapter."

7. The County identifies the following cases: *New Castle County Department of Finance v. Board of Assessment Review of New Castle County and Bennett*, Del.Super., C.A. No. 77A–SE–11, Longobardi, J. (Sept. 28, 1978) (Order), *aff'd*, 405 A.2d 132 (May 8, 1979) (Order); *New Castle County v. Moore*, Del.Super., C.A. No. 83A–SE–7, Walsh, J. (May 24, 1984) (Letter Op.); *New Castle County v. Wolfgang*, Del.Super., C.A. No. 87A–NO–8, Taylor, J., 1989 WL 40943 (April 11, 1989); and *New Castle County v. Historical Society of Delaware*, Del.Super., C.A. No. 89A–MR–8, Gebelein, J., 1990 WL 28623 (January 31, 1990), *aff'd* Del.Supr., 580 A.2d 587 (1990). Additionally, *General Motors v. New Castle County v. Board of Assessment Review*, Del.Super., C.A. No. 92A–12–008, is currently pending before this Court; *General Motors* involves an appeal filed by the County and a cross appeal filed by General Motors Corporation.

■ This argument is misplaced. All of the cases cited by the County for the above stated proposition of law apply to administrative interpretations of a statute. In the case at bar, this Court is engaged in judicial interpretation to determine whether the County has a right of appeal. The County does not allege that the administrative body, the Board of Assessment Review, has interpreted § 8312(c) or § 1306 as granting the County a right of appeal. Further, even if the Board interpreted either statute as granting the County a right of appeal (a function not within its jurisdiction), the Board does not have the authority to authorize an appeal to this Court. Administrative interpretation of a statute will be given weight only where the administrative agency is "empowered to enforce" the statute. *See Eastern Shore Natural Gas Co. v. Delaware Public Service Comm'n*, Del.Supr., 637 A.2d 10, 15 (1994).

■ The fact that the County has appealed adverse decisions of the Board in the past does not require a finding of a right of appeal. Past practices cannot justify an unwarranted interpretation of a statute. *See Colonial School Board v. Colonial Affiliate*, Del.Supr., 449 A.2d 243, 248 (1982) ("Failure to enforce the law does not change the law"). Further, an error of law does not become justified by "mere passage of time." *Wilmington Trust Co. v. Barron*, Del.Supr., 470 A.2d 257, 264 (1983) (holding that where for many years the Justice of Peace courts incorrectly interpreted a statute providing exemptions from garnishment actions, the statute "does not become justified by mere passage of time").

Significantly, in all of the cases cited by both parties where the County has appealed to this Court, the issue of this Court's jurisdiction to hear the County's appeal has apparently been raised only once. In *New Castle County v. Wolfgang*, the issue of whether the County had a right of appeal from the Board was raised by the Court and presented to the parties for further "submissions." *Wolfgang* does not indicate whether, in fact, the *pro se* taxpayer responded to the Court's request or otherwise opposed the right of the County to appeal. *Wolfgang* merely held that, since two prior appeals from the County had been heard by the Superior Court, the court would "not disturb the precedent established ... and [would] permit New Castle County to pursue" the appeal. *Wolfgang* at 4. Past practices, however, will not justify an unwarranted interpretation of a statute. Apparently, the case at bar is the first case in which the appellate jurisdiction of this Court has been squarely contested and thoroughly briefed. To the extent that this opinion is inconsistent with *Wolfgang*, this Court does not follow *Wolfgang*.

The County urges this Court to give "due weight" to the practices and procedures that existed "at the time" the statutes were enacted and that have continued without interruption or challenge thereafter. *Council 81, AFSCME, AFL–CIO v. State Department of Finance*, 293 A.2d at 570–571. The County, however, has not presented evidence of any appeal from the Board filed by the County at or about the time § 8312(c) was amended in 1974. In any event, any evidence of such appeals would not necessarily be determinative of the issue.

The parties have identified only five other cases where the County has appealed to this Court since the 1974 amendment to § 8312(c). Even if there have been additional appeals, this paucity of appeals by the County to the Superior Court can hardly be said to establish precedent for the County's right of appeal.

**D. The County's Construction of § 8312(c) Would Lead to an Illogical Result, Since the General Assembly May Not Have Granted Kent or Sussex County Similar Rights of Appeal**

The County asserts that, should this Court find ambiguity between the reference to New Castle County in § 1306 and the absence of a reference to New Castle County in § 8312(c), then this Court must find a right of appeal for the County in § 8312(c). The County reasons that, if § 8312(c) is ambiguous, this Court must construe the statute liberally, resolving any doubt in favor of a right to appeal. *Hallahan*, 53 A.2d at 433; *In re Preseault*, 292 A.2d at 834. However, if this Court is to read into § 8312(c) a right of New

Castle County to appeal from a Board's decision, it would lead to an arguably illogical result where New Castle County has a right of appeal but Kent and Sussex Counties may not have such a right.

Nowhere in § 8312(c) are Kent or Sussex County explicitly granted the right of appeal from a decision of a board of assessment review. Possibly, Kent and Sussex Counties have never been granted such a right, as at least the legislative history of § 8312(c) reveals. Additionally, 9 *Del.C.* § 7004(h) [8] does not appear to grant Sussex County the right of appeal from a decision of the Board of Assessment Review. This Court, however, does not herein decide whether the governments of Kent and Sussex County have such a right of appeal.

⬛ When construing a statute, a court's objective is to render a sensible and practicable meaning, not an absurd or unreasonable result. *Rodney Square Investors, L.P. v. Bd. of Assessment Review of New Castle County,* Del.Super., 448 A.2d 237, 239 (1982), *aff'd,* 461 A.2d 695 (1983); *Asplundh Tree Expert Co. v. Clark,* Del.Super., 369 A.2d 1084 (1975). Although, perhaps, the General Assembly intended at one time to grant an exclusive right of appeal from a board of assessment review to New Castle County and not to Kent and Sussex Counties, this Court should not go out of its way to give such construction to § 8312(c). It is equally likely that in 1974 the General Assembly intended to remove the reference to New Castle County in order to maintain uniformity among the counties. For this Court to hold otherwise could result in an illogical construction which cannot be said with certainty to have been intended by the General Assembly.

**E. Denial of New Castle County's Right to Appeal Does Not Deny New Castle County Equal Protection of the Laws or Due Process**

⬛ The County contends that if §§ 1306 and 8312(c) do not expressly permit the County to appeal from decisions of the

Board, this Court should find an implicit right of appeal because any other construction would render § 8312(c) unconstitutional. The County argues that, as a general rule, a statute that creates a right to appellate review must "give litigants equal rights of appeal in order to be constitutionally valid." *Legates v. Heverin,* Del.Super., 196 A.2d 403, 405 (1962). Further:

> In all cases, civil and criminal appeal procedures are the creatures of the constitution or statutes within the jurisdiction, and where civil appeals are permitted, due process and equal protection of the law require only that the right to lodge such an appeal be available to all parties to any given controversy.

*State ex rel. Caulk v. Nichols,* Del.Super., 267 A.2d 610, 612 (1970), *aff'd* Del.Supr., 281 A.2d 24 (1971).

⬛ The County states that, as a general rule, a statute creating a right of appeal "must" give litigants equal rights of appeal. However, the doctrine of equal protection of the laws does not protect a state and its subdivisions. *Pennsylvania v. New Jersey,* 426 U.S. 660, 666, 96 S.Ct. 2333, 2336, 49 L.Ed.2d 124 (1976) ("[the Equal Protection Clause] protect[s] people, not States"); *Williams v. Mayor & City Council of Baltimore,* 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015 (1933). Further, the County cannot rely on the constitutional guaranty of due process. *South Carolina v. Katzenbach,* 383 U.S. 301, 323, 86 S.Ct. 803, 816, 15 L.Ed.2d 769 (1966) ("The word "person" in the context of the Due Process Clause of the Fifth Amendment cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union ..."); *Trenton v. New Jersey,* 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923). Therefore, the County, as a political subdivision of the State of Delaware, cannot succeed on its claims that the failure of the General Assembly to grant the County a right of appeal from the Board violates the constitutional principles of equal protection or due process.

---

**8.** Nine *Del.C.* § 7004(h) reads:
 *Judicial review.*—Nothing herein shall be construed as limiting the right of a property

owner [in Sussex County] to appeal to the courts in connection with the assessment of his property for taxation as provided by law.

### F. Summary

This Court, somewhat reluctantly, reaches the conclusion that New Castle County does not possess an appellate right of review to the Superior Court from a decision of the New Castle County Board of Assessment Review. The Court is cognizant that appeal statutes are generally remedial and should otherwise be construed liberally, resolving any doubt in favor of the right to appeal. *Hallahan*, 53 A.2d at 433; *In re Preseault*, 292 A.2d at 834. However, it is an equally fundamental cornerstone of this State's jurisprudence that, "[r]egardless of one's views as to the wisdom of the statute, our role as judges is limited to applying the statute objectively and not revising it." *In re Adoption of Swanson*, 623 A.2d at 1097 (citations omitted). Consideration of whether New Castle, Kent, and/or Sussex Counties should possess a right of appellate review by the Superior Court from decisions of boards of assessment review should be left to the General Assembly, whose attention is respectfully directed toward this issue.[9]

### III. CONCLUSION

For the foregoing reasons, this Court holds that it does not have jurisdiction to hear New Castle County's Appeal from the 1991 and 1992 decisions of the Board of Assessment Review at issue. Therefore, New Castle County's appeal is **DISMISSED.**[10]

### IT IS SO ORDERED.

9. Neither party has raised the issue of the viability of an appeal via a writ of certiorari. The Court notes that a writ of certiorari is, apparently, an insufficient vehicle to hear the County's appeal in this case. Review by certiorari is limited to errors which appear on the face of the record and does not embrace an evaluation of evidence considered by an inferior tribunal. *Mason v. Bd. of Pension Trustees*, Del.Super., 468 A.2d 298, 299, *aff'd*, Del.Supr., 473 A.2d 1258 (1983). Generally, trial testimony is not considered part of the record in a certiorari proceeding. *Castner v. State*, Del.Supr., 311 A.2d 858 (1973). Finally, "certiorari may not be used as a device to circumvent the requisites of the appellate jurisdiction of this Court as established by the Constitution." *Id.* at 858.

10. It is most regrettable that, for a myriad of reasons (including the two-year delay in the filing of the record with this Court), it has taken so long (ten years) to reach this point. As has been attributed to Prime Minister William Ewart Gladstone, "Justice delayed is justice denied." John Bartlett, *Bartlett's Familiar Quotations*, 446 (Justin Kaplan, gen.'l ed., 16th ed. 1992).